UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Case Number 08-20122

v.                                           Honorable David M. Lawson

BRANDON TAYLOR,

                Defendant.

_____/

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant Brandon Taylor has filed a motion, supplemented by appointed counsel, asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Taylor has served about 144 months of a 204-month prison sentence for carjacking, robbery and firearms offenses. Taylor argues that a sentence reduction is justified by his medical conditions coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. He also argues that his "his youth at the time of the underlying offenses" (he was 20 years old when the crimes were committed) is an additional factor that establishes extraordinary and compelling circumstances warranting his immediate release. However, Taylor is only 34, he previously contracted COVID-19 (and was largely asymptomatic), and the BOP made vaccinations widely available at his institution. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Defendant Brandon Taylor pleaded guilty to three counts of carjacking, 18 U.S.C. § 2119, two counts of aiding and abetting carjacking, one count of aiding and abetting robbery of property

of the United States, 18 U.S.C. § 2114, and one count of aiding and abetting the use or brandishing

of a firearm during a crime of violence, 18 U.S.C. § 924(c).  On January 22, 2009, he was sentenced

to concurrent prison terms of 120 months on each of the carjacking and robbery counts, and a

consecutive term of 84 months on the gun count.  Taylor has served 11 years and 11 months or

around 70% of the cumulative 204-month sentence, and he presently is confined at FCI Victorville,

in Victorville, California, which is a medium security facility that houses around 1,170 inmates.

He is scheduled to be released on December 15, 2022.  Taylor is 34 years old.

On February 3, 2021, Taylor filed a *pro se* motion seeking compassionate release under 18

U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  The Court appointed counsel,

and a supplemental brief was filed.  The government filed an opposition supported by exhibits

including prison disciplinary and medical records, and the defendant filed a reply.

The most recent data disclosed by the BOP indicates that there are no active coronavirus

cases among inmates or staff in the "Medium I" division of the Victorville facility where the

defendant is confined, although 587 inmates and 83 staff previously were diagnosed and now have

recovered.    Reports  indicate  that  two  inmates  and  one  staff  member  have  died.    *See*

https://www.bop.gov/coronavirus/.  The BOP also recently began reporting data on the number of

COVID-19 vaccinations that it has administered to staff and inmates.  Reported figures covering

the entire Victorville prison complex indicate that 398 staff and 1,888 inmates fully have been

vaccinated.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has

been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. §

3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate

release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)).  Taylor relies on subparagraph (i) of the statute.  Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps.  *First*, consider whether "extraordinary and compelling reasons warrant such a reduction."  *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which does not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").  That has led the court of appeals in its evolving guidance on the subject to hold that district courts should

dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Taylor contends that he has several medical conditions that subject him to an elevated risk of complications from the highly-contagious novel coronavirus.  He asserts that his overweight condition (body mass index [BMI 25.3]) and history of smoking provide extraordinary and compelling reasons for his release.  He also says that he "contracted COVID-19 and continues to suffer from a myriad of consequences, including shortness of breath, coughing up blood, fluid in his lungs, and weight loss," which he contends place him at an elevated risk from possible infection with the COVID-19 disease.  The government contends, however, that the defendant's assertions of medical risk are unsubstantiated by the available medical records.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.  And the defendant is justifiably concerned about the health risks posed by his incarceration.  "The COVID-19 virus is highly infectious and can be transmitted easily from person to person.  COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise.  If contracted, COVID-19 can cause severe complications and death. . . .  [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).  "The COVID-19 pandemic is extraordinary and

- 5 -

unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration."  *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, over the past year, numerous [federal] courts . . . have ordered the release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences."  *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist.  *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that a person's age and having certain medical conditions may elevate the risk of complications for anyone who is infected with the COVID-19 disease.  *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-

with-medical-conditions.html (last updated May 13, 2021). The CDC recently overhauled the presentation of its guidance about a range of medical conditions. The newly revised guidance warns as a general matter that "[a]dults of any age with the following conditions can be more likely to get severely ill from COVID-19," and it explains that "[s]evere illness means that a person with COVID-19 may need: [h]ospitalization, [i]ntensive care, [a] ventilator to help them breathe, [o]r they may even die." *Ibid.* Among the listed conditions, the CDC advises that being "overweight" (BMI > 25), "obese" (BMI > 30), or "severely obese" (BMI > 40), all "can make you more likely to get severely ill from COVID-19." The guidance further notes that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI." *Ibid.* Drilling down into the CDC's background for its taxonomy of risk factors, the agency explains that it found the associational risk of having a BMI in the obese range was supported by the most robust cadre of evidence featuring "systematic review" and "meta-analysis," with the risk due to overweight BMI being supported by somewhat less robust evidence consisting of "mostly cohort, case-control, or cohort studies." *See* CDC: Evidence re: Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html (updated May 12, 2021). The guidance also advises that "[b]eing a current or former cigarette smoker can make you more likely to get severely ill from COVID-19." The associational risk of smoking with severe disease also was supported by the most robust quality of evidence surveyed by the CDC.

The government takes issue with the defendant's sworn assertions about his present health situation. And the available medical records do cast some doubt on his claim that he presently is overweight (according to him, his BMI is around 25.4, based on his self-reported height of 5'10" and recently recorded weight of 177 pounds). Medical file notes from December 10, 2020 report a significantly lower weight of 150 pounds, which for a height of 5'10" correlates with a decidedly

normal range BMI of 21.5.  The government also points out that the defendant did not report any history of smoking in response to presentence interview queries about his health.  But the defendant says there was no reason for him to highlight that aspect of his past health in the context of the sentencing proceeding.

Notwithstanding the factual controversies highlighted by the parties, for the purpose of this analysis it is sufficient to accept the defendant's assertions at face value and assume for the sake of this decision that the defendant has at least two recognized medical factors that may pose a risk of severe consequences if he is infected with the coronavirus.  However, the recognition that an inmate has one or more medical risk factors does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release.  That is because another pertinent consideration is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be nil.  Recent reports indicate that the probability of infection at Victorville, although once quite high, now is very low, with no active cases among inmates or staff at the prison.

Further, even as the incidence of infection at Victorville dramatically has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid deployment of newly available vaccines, which so far have been administered fully to 398 staff and 1,888 inmates in the prison's at-large population.  The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds.  Federal courts recently have held that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk.  *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases). Even if the defendant has established sufficiently that he has two acknowledged risk factors, considering the present absence of any active cases among inmates at his facility, as well as the

ongoing vaccination program at Victorville, the defendant has not shown that he presently faces an extraordinary and compelling medical risk that warrants his release.

Moreover, the fact that the defendant previously contracted the disease and since has recovered, apparently without any lasting severe damage to his health, mitigates rather than aggravates the assessment of his potential risk from any future reinfection.  *See United States v. Gilmore*, No. 17-20519, 2021 WL 1295360, at *4 (E.D. Mich. Apr. 7, 2021) (collecting cases). The defendant contends that he suffered "serious complications" from his bout with the virus, but that assertion is belied by medical notes indicating that his symptoms were "minor" and unextraordinary throughout the 10-day course of the infection.  *See* Medical Notes dated Dec. 10, 2020, ECF No. 115-1, PageID.1279 ("Inmate has had s/s of COVID for 10 days. His main symptom is SOB since day one. His other s/s are minor, no appetite, spitting up some blood. He has no pain in his chest and no pain with deep inspiration.").

The defendant points out that file notes from the same examination also reported "diminished breath sounds" and "ill defined opacities in the right mid-to-low lungs," *id.* at PageID.1275, but the available medical records do not substantiate the defendant's assertion that those symptoms were either debilitating or that any symptoms observed during the infection persist presently.

The defendant points out that this Court previously ordered the release of an inmate who was confined at a facility with only a handful of active cases, and despite a prior COVID infection from which she had recovered.  But that case is readily distinguishable because there the inmate was hospitalized with severe pneumonia, required mechanical breathing assistance, and was administered multiple antiviral medications to support her recovery.  *See United States v. Brownle*e, No. 14-20562, 2020 WL 6118549, at *6 (E.D. Mich. Oct. 16, 2020) ("Hospital notes

- 9 -

from July 13, 2020 indicate that within three days after her admission [the defendant] had been diagnosed with bilateral pneumonia resulting in respiratory failure. Her treatment plan included administration of remdesivir, dexamethasone, and convalescent plasma; she also was put on an 'airvo' device to aid her respiration."). Here there is no suggestion that any such heroic measures were either warranted or administered during the course of the defendant's prior illness.

The defendant points out that he was prescribed several medications while he was sick, but nothing in the medical record suggests that he suffered any severe respiratory compromise or required any exotic treatment regimen to survive. On balance, the relatively routine progress of the defendant's encounter with the disease is a factor that weighs against rather than in favor of granting compassionate release.

Despite the possible presence of medical factors that give rise to some cause for concern, the status of the pandemic at the defendant's facility has been altered from a landscape that was much more alarming to a situation that is at present decidedly less so. The fact that the defendant contracted the virus and since has recovered further mitigates the assessment of risk. Taking all of the circumstances into account, the defendant has failed to establish that an extraordinary and compelling risk to his health presently warrants his immediate release.

The defendant also argues that his relative youth at the time of his crimes (age 20) is a factor that contributes to the extraordinary and compelling circumstances justifying early release. He cites prominently the concurring opinion in *United States v. Marshall*, 736 F.3d 492, 502 (6th Cir. 2013) ("Because sentencing is an 'individualized' task, *Gall v. United States*, 552 U.S. 38, 50 (2007), and Marshall is not seeking a categorical ban on mandatory minimum sentences for all juvenile offenders, I do not find that his chronological age presents an obstacle to the relief he seeks.") (Lawson, J., concurring in the judgment), the Tenth Circuit's recent affirmance of a

- 10 -

district court's ruling granting compassionate release to a prisoner for reasons unrelated to the pandemic, and based in part on the inmate's relative youth at the time of his offenses, *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021), and this Court's recent decision granting compassionate release to an inmate who was sentenced to cumulative terms of 100 years in prison due to multiple stacked sentences on serial 924(c) convictions, *United States v. McDonel*, No. 07-20189, 2021 WL 120935, at *1 (E.D. Mich. Jan. 13, 2021) ("Defendant Robert McDonel, then 21 years old, was sentenced to over 100 years in prison in 2008 after engaging in a spree of auto parts store robberies using a handgun. That extraordinarily harsh sentence was the product of a statutory sentencing scheme that required enhancing and stacking sentences for multiple firearm brandishing offenses even when the crimes were committed as part of the same episode and charged in a single indictment.").

The *Marshall* decision is inapposite because there the defendant challenged the proportionality of his sentence under the Eighth Amendment and in the course of a direct appeal; that case did not address "youth" as a factor in the context of a request for compassionate release. That ruling does not aid the resolution of the question presented here.

The *Maumau* decision is distinguishable because the analysis there was influenced heavily by other significant factors, principally the "incredible" length of the stacked mandatory and consecutive terms that were imposed, based on provisions of 18 U.S.C. § 924(c) that had been nullified by the First Step Act. *See Maumau*, 993 F.3d at 837 ("[T]he district court's decision indicates that its finding of 'extraordinary and compelling reasons' was based on its individualized review of all the circumstances of Maumau's case and its conclusion 'that a combination of factors' warranted relief, including: 'Maumau's young age at the time of' sentencing; the 'incredible' length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of

sentence-stacking under § 924(c); and the fact that Maumau, 'if sentenced today, . . . would not be subject to such a long term of imprisonment.'").  In this case, the only pertinent congruent factor is the defendant's relative youth, and the additional compelling factor of stacked and consecutive terms is absent.  The same concerns about extraordinarily harsh stacked sentences motivated this Court's grant of compassionate relief from the cumulative 100-year term imposed on a 24-year-old offender in *United States v. McDonel*, No. 07-20189, 2021 WL 120935, at *1 (E.D. Mich. Jan. 13, 2021).  That case is distinguishable for the same reasons, as are the other decisions cited by the defendant, all of which granted relief on similar grounds.  Here, the sentence was long, but no multiple stacked terms were imposed for the gun charge in this case, and the reasoning of those decisions is unpersuasive in the circumstances presented by this case.

In its recent decision in *United States v. Owens*, 996 F.3d 775 (6th Cir. May 6, 2021), the Sixth Circuit endorsed the principle established by other circuits where it reversed the district court's denial of a motion for compassionate release, finding that it was error for the district court summarily to disregard an extreme sentencing disparity as a possible factor bearing on whether extraordinary and compelling circumstances were shown.  *See id.* at 764 ("We [] remand to the district court to permit it to consider whether Owens's rehabilitative efforts and the lengthy sentence he received because of exercising his right to a trial may, in combination with the First Step Act's changes to § 924(c), constitute an extraordinary and compelling reason for compassionate release.").  Owens, like the defendants in similar cases noted above, received an outrageously lengthy sentence of 1,260 months in prison — which the court of appeals noted effectively was a sentence of life in prison without parole — due to multiple stacked mandatory minimum 924(c) penalties.  Notably, he was subjected to this incredibly harsh penalty only because he had elected not to cooperate and plead guilty to a limited slate of initial charges, which

prompted the government to pile on superseding counts that drastically elevated his sentencing exposure. For the same reasons discussed above, *Owens* is distinguishable from this case because Taylor was not subject to any 924(c) penalty stacking. It is clear by now that a gross disparity between a defendant's pre- and post-enactment sentencing exposure that was impacted by the First Step Act is a factor that the Court may consider, along with other relevant circumstances, in deciding whether an extraordinary and compelling case for release has been made. Here, however, the circumstances are distinguishable, and even with the sentence disparity rolled into the mix, the facts do not cross the extraordinary and compelling threshold.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons for release, the Court need not address the section 3553(a) factors. *Tomes*, 990 F.3d at 504 (reiterating that "'district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others'") (quoting *Elias*, 984 F.3d at 519).

III.

Taylor has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 39, 45) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  June 9, 2021